# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Debbie Ann Tucker,                                    File No. 22-CV-00702 (JMB/SGE)

        Plaintiff,

v.

                                   **ORDER**

Alejandro Boldo, *a Minneapolis Police Officer*,

        Defendant.

Nicholas Ratkowski, Ratkowski Law PLLC, St. Paul, MN, for Plaintiff Debbie Ann Tucker.

Gregory P. Sautter, Munazza Humayun, and Rebekah Murphy, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendant Alejandro Boldo.

This matter is before the Court on Plaintiff Debbie Ann Tucker's motion for partial summary judgment and Defendant Alejandro Boldo's motion for complete summary judgment. (Doc. Nos. 23, 48.) In this action, Tucker brings a claim under 42 U.S.C. § 1983 against Boldo, a Minneapolis Police Officer, alleging that he used excessive force in violation of the Fourth Amendment and that he committed a battery against her in violation of Minnesota state law. For the reasons explained below, the Court grants Boldo's motion and will dismiss this action.

## STATEMENT OF UNDISPUTED FACTS

Late on the morning of May 14, 2020, Tucker rode as the front-seat passenger in a vehicle driven by Antoine Lamont McDaniel.  (Doc. No. 51-3 at 9.)  Tucker's daughter was a passenger in the back seat.  (Doc. No. 51-2 at 130:14–15.)

Minneapolis Police Officer Ryan Atkinson observed the vehicle driven by McDaniel parked in a handicapped spot in a strip mall parking lot.  (Doc. No. 51-3 at 8, 9.)  Atkinson also observed the absence of a handicapped tag displayed in the vehicle.  (*Id.*)  Atkinson approached the vehicle and spoke with McDaniel.  (*Id.* at 9.)  McDaniel identified himself and, shortly after, Atkinson discovered that there were several active felony warrants for his arrest.  (*Id.* at 8.)  Atkinson called for assistance, removed McDaniel from the vehicle, and detained him.  (*Id.* at 8, 9; Doc. No. 51-5 [hereinafter, "Boldo Body Cam"] at 1:00–:05.)

Boldo arrived at the scene just as McDaniel exited the driver's seat of the vehicle.  (Boldo Body Cam at 1:00–:05.)  Boldo's body-worn camera footage shows that as Boldo approached Atkinson, a woman's voice can be heard coming from inside of the vehicle, shouting at and arguing with Atkinson.  (*Id.* at 1:02–:13.)  Boldo testified that, "[b]ased on my training and experience, when we detain a vehicle for either search and [seizure] or traffic violation or equipment violation, we want to secure both sides of the vehicle and have all occupants inside."  (Doc. No. 29 at 17:10–14; *see also id.* at 28:19–29:8.)  That being the case, Boldo walked around the back of the car toward the passenger side of the vehicle.  (Boldo Body Cam at 1:12–:20.)  At the time, Boldo stood approximately twelve to eighteen inches away from the passenger side of the vehicle.  (Doc. No. 29 at 12:5–11;

Boldo Body Cam at 1:15–:20.)  Boldo testified that he stood there to "observe the occupants' movements and hands" for "officer safety" and to prevent vehicle occupants from "flee[ing] or fight[ing] with [officers]."  (Doc. No. 29 at 12:12–15, 13:10–17.)

While standing next to the vehicle, Boldo became aware that there were two passengers inside the vehicle—one in the front and another in the back.  (*Id.* at 12:21–13:3.)  As he approached the front passenger door, someone can be heard inside the car exclaiming, "That's bullsh*t!"  (Boldo Body Cam at 1:22–:23.)  Just then, Tucker can be seen opening the front passenger door and starting to exit the vehicle.  (*Id.* at 1:23–25.)  At the same time, the arresting officer can be seen leading a handcuffed McDaniel away from the vehicle.  (*Id.* at 1:20–:22.)

Boldo testified that "[Tucker's] behavior of attempting to exit the vehicle gave me signs that she possibly could want to fight."  (Doc. No. 29 at 16:11–13.)  Boldo placed his right hand on the door to prevent Tucker from exiting.  (Boldo Body Cam at 1:22–:24.)  Boldo testified that, at the time, he "underst[ood] her feet were inside the vehicle," that he "wasn't able to see her feet," and that he was not looking at her feet because he was "more focused on hand movement, more on the other passenger and looking at her."  (Doc. No. 29 at 21:10–16.)  Tucker then exclaimed, "Ow!  Why you smashing my foot?"  (Boldo Body Cam at 1:23–:24.)  At the same time, Boldo testified that he noticed that he "wasn't able to close the door," at which time he "stopped attempting to close it."  (Doc. No. 29 at 21:24, 22:2–4.)  Boldo told Tucker to "[s]tay in the car."  (Boldo Body Cam 1:25–:26.)  Tucker can then be heard yelling, "You're smashing my f*ckin' foot!" while pulling down her PPE mask.  (*Id.* at 1:26–:27.)  Boldo then told her to "pull it in."  (*Id.* at 1:27–:28.)

Tucker testified that, at that point, she thought to herself: "I'm like stay in the car for what[?]" (Doc. No. 51-2 at 133:5–6.) Tucker then used both of her hands to forcefully push the door open while shouting, "Motherf*cker, I've got cancer!" (Boldo Body Cam at 1:28–:29.) Boldo testified that this movement surprised him; he also testified that her movement caused him "discomfort" because the door hit him in his belt and groin area. (Doc. No. 29 at 32:1720.) Boldo can be seen pushing back on the door to prevent Tucker's exit from the vehicle. (Boldo Body Cam at 1:28–:30.) Tucker then held the top of the door with her left hand and swung her right arm around the vehicle's door, attempting to strike Boldo with her right hand. (*Id.* at 1:28–:31.)

Boldo testified that he felt Tucker's fingernails on his face, causing him to fear for his physical safety. (Doc. No. 29 at 26:1–2, 37:2–4.) Boldo then used two hands to push the door shut. (Boldo Body Cam at 1:30–:32.) Tucker testified that Boldo "slammed the car door so hard on my leg that my shoe [flip flop] flew off." (Doc. No. 51-2 at 133:8–10, 135:7–8.) Tucker then called Boldo a "stupid *ss bastard," while Boldo yelled, "How dare you put your hands on me!" (Boldo Body Cam at 1:33–37.) Boldo and Tucker can then be heard arguing with one another, both directing profanities toward the other. (*Id.* at 1:36–:54.) Tucker's daughter then intervened and de-escalated the situation, while Boldo went to sit in his squad car, leaving his colleagues to continue speaking with Tucker and her daughter. (*Id.* at 1:55–2:54; Doc. No. 29 at 39:3–11.)

Shortly after, Tucker filed a complaint with the Minneapolis Police Department relating to her encounter with Boldo. (Doc. No. 29 at 48:24–49:2.) Boldo testified that, ultimately, he was disciplined for failing to provide his name and badge number to a

bystander at the scene; however, he was not disciplined for any alleged excessive use of force because the department found Tucker's allegation "wasn't sustained." (Doc. No. 29-1 at 3–9.)

Six days after the confrontation, Tucker sought medical attention for her leg due to "worr[y] that there could be something more serious wrong with the leg" because the bruising had not improved and it felt like there was a "dent in her leg." (Doc. No. 54 at 2.) Her physician observed "a moderate sized bruise which is tender to touch" on the front of Tucker's lower right leg. (*Id.*) Tucker reported and her physician observed that she was able to—and did—walk on the leg without issue. (*Id.*) Her physician advised as follows: "You have a very bad bruise on your leg and leg bone," which would "take time for this to heal—expect 2–4 weeks." (*Id.* at 1.)

On March 17, 2022, Tucker filed a two-count Complaint with this Court. In it, she brings a claim under 42 U.S.C. § 1983, asserting that Boldo's use of force against her was unreasonable and excessive (Count I), and that Boldo committed battery against her in violation of Minnesota law (Count II).

## DISCUSSION

Tucker now moves for summary judgment on only the issue of liability in her section 1983 claim. (Doc. No. 23.) Boldo also moves for complete summary judgment, arguing that he is immune from liability for the section 1983 and state battery claims. (Doc. No. 48.) The Court concludes that summary judgment in Boldo's favor is appropriate.

As a threshold matter, the Court observes that summary judgment is warranted if there is no genuine dispute as to any material fact or the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive the motion, the non-moving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  In the case of cross motions for summary judgment, as here, the Court views the record in the light most favorable to the defendant when considering plaintiff's motion, and vice-versa.  *E.g.*, *Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 825 (D. Minn. 2011).

## I.    QUALIFIED IMMUNITY FROM SECTION 1983 CLAIM

Boldo first argues that qualified immunity shields him from liability for the conduct underlying Tucker's section 1983 claim.  The Court grants Boldo's motion for summary judgment of this claim because no binding legal authority clearly establishes a right to be free from Boldo's use of force under these circumstances.

In general, the doctrine of qualified immunity protects government officials from section 1983 liability "unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."  *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004).  This immunity shields all government officials, except for "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (emphasis added); *see also Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (advising that officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines").

Qualified immunity is an affirmative defense, and at the summary judgment stage, the plaintiff can overcome a claim of qualified immunity if the plaintiff is able to satisfy each of the following two prongs of the qualified immunity analysis: (1) identify evidence to show that "the officer's conduct violated a constitutional right"; and (2) identify legal authority (and evidence to support necessary underlying facts) that "the right was clearly established" in light of "information [the government official] possessed at the time of the alleged violation." *Littrell*, 388 F.3d at 582–83 (quotation omitted); *see also, e.g.*, *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (concluding that to establish the second prong, the plaintiff must identify legal precedent that "place[s] the constitutional question beyond debate"); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1212 (8th Cir. 2013) (concluding that the second prong can be established if the plaintiff identifies caselaw that "gave [the officer] fair warning that his alleged treatment of [the plaintiff] was unconstitutional") (quotation omitted). Though it is the province of the factfinder to "determine disputed predicate facts" in this analysis, the ultimate "question of qualified immunity is one of law for the [C]ourt." *Littrell*, 388 F.3d at 584–85; *Wright v. United States*, 813 F.3d 689, 696 (8th Cir. 2015) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'") (quotation omitted). In addition, the Court has discretion to decide whether one or both prongs is satisfied and may do so in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the Court concludes that under these circumstances, no binding precedent exists that "place[s] the constitutional question beyond debate," *see Hollingsworth*, 800 F.3d at 989, or that makes the alleged unlawfulness of Boldo's actions apparent "in light of pre-existing law," *Wright*, 813 F.3d at 696. Tucker generally references the Fourth Amendment, which protects individuals from unreasonable seizure and argues that Boldo exercised excessive force by "restraining [her] in the vehicle via the use of force," even though she was non-violent, compliant, posed no threat to Boldo, and had not committed a crime. (Doc. No. 24 at 20, 22; Doc. No. 62 at 20–24.) This reliance on the general protections of the Fourth Amendment, however, does not address the particular circumstances of this case and others like it, which concern the reasonableness of force used to keep an individual inside a vehicle to ensure the safety of the officers involved or members of the public. *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011) (advising that "[t]he general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established," and that courts must not "define clearly established law at a high level of generality").

The Eighth Circuit recognizes that, during a lawful traffic stop, "officers can take actions that are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Warren*, 984 F.3d 1301, 1304 (8th Cir. 2021) (quotation omitted). This includes asking a vehicle occupant to remain

inside of a vehicle at the scene of an arrest or investigation.[1]  *See id.* at 1304.  Moreover, if a person becomes recalcitrant when an officer seeks compliance with officer-safety protocols, "it [i]s not unreasonable for officers to use *some* force" to bring the person into compliance.  *Hollingsworth*, 800 F.3d at 990 (emphasis in original).  The Eighth Circuit has held that officers may "increase restraint proportionate to uncooperative behavior during an investigative detention."  *McElree v. City of Cedar Rapids*, 983 F.3d 1009, 1017 (8th Cir. 2020) (citing *Waters v. Madson*, 921 F.3d 725, 738 (8th Cir. 2019) (concluding that officers who used force to maintain the status quo during an investigative detention were entitled to qualified immunity and dismissing driver's and passenger's claims of unreasonable seizure and excessive force)).

Boldo's uncontested testimony establishes that he is trained to require vehicle occupants to remain in the vehicle during police encounters in order to ensure officer safety and, for that reason, he prevented Tucker from opening her car door.  (Doc. No. 29 at 28:25–29:8.)  Body camera footage shows that Tucker was very agitated and recalcitrant from the moment Boldo asked her to remain in the vehicle.  Upon learning that Tucker's foot was preventing Boldo from closing the vehicle door, Boldo instructed her to "put it in," which the Court construes as asking her to comply with the safety protocol he was attempting to follow.  (Boldo Body Cam at 1:27.)  In response, Tucker became more recalcitrant than before, yelling and cursing, before trying to open the door further, and eventually attempting to exit the vehicle and striking Boldo.  (*Id.* at 1:20–1:35.)

---

[1] The fact that an arrest is already in progress when an officer arrives on the scene does not alter this proposition.

The Court is unaware of any binding precedent that would prohibit an officer from using some force to require an uncooperative vehicle occupant to remain in the vehicle during an arrest of the driver. Given the binding Eighth Circuit caselaw permitting the use of force to maintain the status quo and ensure safety of officers and members of the public during police encounters, the second prong of the qualified immunity standard compels the Court to grant Boldo's motion.

## II.      OFFICIAL IMMUNITY FROM STATE BATTERY CLAIM

Boldo next argues that official immunity protects him from liability for the conduct underlying Tucker's state battery claim. The Court grants Boldo's motion for summary judgment of this claim because Tucker has not identified evidence to support a finding that Boldo acted with malice.

Under Minnesota law, a "public official is entitled to official immunity from state law claims when that official is charged by law with duties that require the exercise of judgment or discretion, unless the officer acted maliciously or willfully." *Meehan v. Thompson*, 763 F.3d 936, 947 (8th Cir. 2014) (quoting *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990)) (cleaned up). An officer acts maliciously if "the wrongful act so unreasonably put at risk the safety and welfare of others that as a matter of law it could not be excused or justified." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 902 (8th Cir. 2020) (citing *Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 465 (Minn. 2014)). Put differently, there is no malice if any of the following three circumstances is evident from the record: (1) the officer's conduct was objectively legally reasonable; (2) the officer's conduct was performed in good faith; or (3) the officer's conduct "did not violate a clearly

established right." *Mitchell*, 959 F.3d at 902 (citing *Gleason v. Metro Council Transit Ops.*, 563 N.W.2d 309, 318 & n.3 (Minn. App. 1997)).

It is well established that officers may take actions "to protect their personal safety and to maintain the status quo during the course of [a traffic] stop." *Warren*, 984 F.3d at 1304 (quotation omitted). In addition, the degree of permissible acts of restraint increase "proportionate to uncooperative behavior during an investigative detention." *McElree*, 983 F.3d at 1017. Given this caselaw and as discussed *supra* Part I.A., Boldo acted within clearly established law and acted without malice. Therefore, Boldo is entitled to summary judgment in his favor on Count II.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff Debbie Ann Tucker's motion for summary judgment (Doc. No. 23) is DENIED;

2.    Defendant Alejandro Boldo's motion for summary judgment (Doc. No. 48) is GRANTED; and

3.    This matter is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  December 17, 2024                         /s/ *Jeffrey M. Bryan*
                                                 Judge Jeffrey M. Bryan
                                                 United States District Court

11